UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

VONDELLE M. OVER,

        Plaintiff,

v.                                    Case No. 24-cv-578-scd

SARAH ENGLISH, et al.,

        Defendant.

## DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

      Plaintiff Vondelle M. Over, an inmate who is representing herself, is proceeding on an Eighth Amendment deliberate indifference claim in connection with allegations that Defendants Sarah English, Ashley Haseleu, and Laura Sukowaty have failed to provide adequate medical care for a mass on her chest that causes chronic left arm pain since 2022. Dkt. Nos. 1, 11, & 28. On July 7, 2025, Defendants filed a motion for summary judgment. Dkt. No. 30. Because no reasonable jury could conclude that Defendants were deliberately indifferent towards Plaintiff's medical condition, the Court will grant the motion for summary judgment and dismiss this case.

### PRELIMINARY MATTERS

      Before turning to the substance of Defendants' motion for summary judgment, the Court must address the fact that Plaintiff failed to comply with the Court's summary judgment procedures. *See* Civ. L. R. 56 (E.D. Wis). Pursuant to the local rules, a party opposing a motion for summary judgment must file a memorandum of law, a concise response to the moving party's statement of facts, and supporting evidence. *See* Civ. L. R. 56(b)(2). A response to the moving party's statement of undisputed facts must make clear which, if any, of the proposed facts are in

dispute. *Id*. The opposing party's response must reproduce each numbered paragraph of the moving party's statement of facts followed by a response to each paragraph. *See* Civ. L. R. 56(b)(2)(B). If the fact is disputed, the party must include a specific reference to an affidavit, declaration, or other part of the record that supports the claim that a genuine dispute exists as to the fact stated by the moving party. *Id.* If the opposing party believes there are additional facts that prevent the entry of summary judgment, they should include a statement, consisting of short, numbered paragraphs that set forth each additional fact and include references to the affidavits, declarations, or other parts of the record that support the assertion. *See* Civ. L. R. 56(b)(2)(B)(ii).

On July 7, 2025, Defendants filed a motion for summary judgment. Dkt. No. 30. In that motion, they reproduced Federal Rule of Civil Procedure 56, Civil Local Rule 7, and Civil Local Rule 56, as required by the local rules. *See id*. The following day, on July 8, 2025, the Court entered a Notice and Order reminding Plaintiff that she had to file a memorandum of law, a concise response to the moving party's statement of facts, and supporting evidence in order to properly oppose the motion for summary judgment. Dkt. No. 36. The Court warned that "failure to comply with the requirements of Civil L. R. 56 may result in sanctions up to and including the Court granting Defendants' motion." *Id.* at 2.

Plaintiff filed her "response" materials on August 20, 2025. *See* Dkt. Nos. 38-42. She filed an 87 page "response," a "request for admissions," and three "declarations." *See id*. Although Plaintiff purports to "dispute" a number of Defendants' proposed findings of fact, for many of the proposed facts she disputes, she does not cite to evidence that supports her claim that a genuine dispute exists as to the fact stated. *See* Dkt. No. 38. For example, most of Defendants' proposed facts are supported by verifiable medical records. *See* Dkt. No. 32. Plaintiff "disputes" those verifiable facts by simply saying "please see all exhibits" without specific references to an

2

affidavit, declaration, or other part of the record. *See* Dkt. No. 38. The Seventh Circuit has "routinely held that a district court may strictly enforce compliance with its local rules regarding summary judgment motions." *Schmidt v. Eagle Waste & Recycling Inc.*, 599 F.3d 626 (7th Cir. 2010) (citation omitted). Therefore, the Court will deem as admitted Defendants' proposed findings of fact to which Plaintiff did not properly respond in accordance with the local rules. *See Phoneprasith v. Greff*, No. 21-3069, 2022 WL 1819043 (7th Cir. June 3, 2022) (holding that a district court is entitled to deem unopposed facts admitted under Civ. L. R. 56(b)(4) regardless of a non-movant's detailed opposition brief, affidavit, and exhibits); *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (same). With these considerations in mind, the Court turns to Defendants' motion for summary judgment.

**UNDISPUTED FACTS**

At the relevant time, Plaintiff was an inmate at the Waupun Correctional Institution. Dkt. No. 32, ¶1. Defendants are Dr. Laura Sukowaty, Dr. Sarah English, and Assistant Health Services Manager (AHSM) Ashley Haseleu. *Id.*, ¶¶3-13.

On March 21, 2022, Plaintiff complained of pain from a "mass" she noticed on her chest. *Id.*, ¶16. Nurse Holfelt (not a defendant) went to the strip-search cell to examine Plaintiff and noted "no physical abnormalities." *Id.*, ¶17. Plaintiff then complained about "shooting pain" down her left arm, allegedly caused by the mass, and asked to go to the Health Services Unit (HSU). *Id.* Nurse Holfelt responded that, based on her examination, going to HSU was unnecessary, but Plaintiff would be seen again the following day, on March 22, 2022, for her daily wound care appointment (in connection with a different injury). *Id.* Nurse Holfelt explained that, if the issue with the left arm persisted, it could be addressed then. *Id.*

3

The following day, on March 22, 2022, Nurse Hosfelt saw Plaintiff again for her daily wound care appointment. *Id.*, ¶18. Plaintiff again wanted to address the mass that was causing her chest/arm pain and stated that it had been caused by an antibiotic she was taking. *Id.* Plaintiff also stated that the range of motion in her left arm was limited due to the mass. *Id.* Nurse Holfelt noted a small bump to the left side of Plaintiff's chest located horizontal to the nipple. *Id.*, ¶19. Nurse Hosfelt forwarded the information to Advanced Practice Nurse Prescriber (APNP) Moore (not a defendant) for further recommendations/orders. *Id.* Later that day, Plaintiff submitted a Health Services Request (HSR) complaining about the same issue, and that HSR was referred to APNP Moore for review as well. *Id.*, ¶21.

Two days later, on March 24, 2022, APNP Moore examined Plaintiff. *Id.*, ¶22. APNP Moore noted there was no redness or warmth to the area, but it was painful with palpitation. *Id.* She ordered an ultrasound of the mass for further evaluation. *Id.*, ¶23. Because Plaintiff was allergic to nonsteroidal anti-inflammatory drugs (NSAIDs), she was limited to use of topical pain-relieving creams. *Id.* Toward that end, Plaintiff already had prescriptions for three different types of topical pain-relieving creams that she could use for her chest/arm pain. *Id.* Plaintiff was also placed on the "chronic pain" waiting list. *Id.*, ¶¶24 & 25.

A few weeks later, on April 14, 2022, Plaintiff received the ultrasound. *Id.*, ¶26. The ultrasound showed a mass of even density that was solid. *Id.* The mass measured 4.3 x 0.9 x 4.1 cm. *Id.*, ¶106. There were no vessels or margins that could be easily defined. *Id.*, ¶26. This meant that the mass likely was not breast cancer. *Id.*, ¶¶26 & 27. The radiologist who reviewed the ultrasound recommended a mammogram, so Dr. Sukowaty ordered a mammogram for further evaluation of the mass. *Id.*, ¶28. But on the day of the scheduled mammogram—May 25, 2022—Plaintiff refused the appointment. *Id.*, ¶¶ 28 & 30. Dr. Sukowaty then saw Plaintiff again for an

4

unrelated medical condition on June 28, 2022. *Id.*, ¶112. Plaintiff did not mention chest/arm pain from the mass during that appointment; therefore, Dr. Sukowaty had no further recommendations on the condition given that Plaintiff had refused a mammogram, which was the "gold standard" in diagnosing breast masses. *Id.*, ¶¶31 & 113. Dr. Sukowaty explains that Plaintiff's last mammogram (in 2019) was normal and her last ultrasound (in 2022) was also normal. *Id.*, ¶113. Dr. Sukowaty explains that mammograms are generally only done once every five years before the age of 40, so she had no concerns with Plaintiff refusing the mammogram in May 2022. *Id.* At the time, Plaintiff already had three different prescriptions for topical creams for her chest/arm pain and was on the waitlist for the chronic pain management program. *Id.*, ¶¶23 & 24.

Between June 2022 and November 2023, Plaintiff filed numerous HRSs about chest/arm pain from the mass, all of which were addressed by non-defendant HSU staff: Nurse Leberak, Nurse York, Nurse Krainyk, Nurse Lewis, Nurse Hohenstern, and Nurse Wenger. *Id.*, ¶¶33-51. Plaintiff was scheduled for at least nine different in-person examinations (two of which she rejected); she had access to topical pain-relieving creams; she received ice packs; she received the option to complete the mammogram that she rejected in May 2022; and she received the option to complete a second ultrasound to check the condition of the mass. *Id.*, ¶¶32, 33, 37, 40, 41, 43, 44, 47, & 50. The in-person examinations confirmed that the condition of the skin was not significantly changing, which meant cancer was unlikely. *Id.*, ¶¶37, 44, 50. Plaintiff again rejected the mammogram, but agreed to complete a second ultrasound on June 29, 2023. *Id.*, ¶41. The ultrasound showed a mass that measured 1.7 x 1.3 x 1.7 cm, which meant the mass was shrinking. *Id.* The radiologist who reviewed the ultrasound diagnosed the mass as lipoma (an area of fatty tissue). *Id.*, ¶¶42 & 111. Lipoma is always benign and is never cancer. *Id.*, ¶111.

Plaintiff continued complaining that the chest/arm pain from the mass was not being treated, so Dr. English reviewed her file in November 2023. *Id*., ¶51. Dr. English noted that Plaintiff was refusing the best diagnostic test available for breast masses (a mammogram); and the ultrasounds showed the mass was not malignant. *Id*. Dr. English again offered a mammogram, if Plaintiff was agreeable. *Id*. Plaintiff again refused the mammogram claiming (incorrectly) that she had already completed two mammograms in the past. *Id*., ¶52. AHSM Haseleu wrote to Plaintiff on November 16, 2023, clarifying that she had only received one mammogram, but could still do a second one, if she wanted. *Id*., ¶53.

On December 8, 2023, Dr. English examined Plaintiff's mass in person and agreed with the prior diagnosis of lipoma. *Id*., ¶54. Dr. English explained that cancerous masses usually do not hurt and are usually fixed to the chest wall. *Id*. She explained that the mass on Plaintiff's chest was freely mobile and did not change in texture, so she did not think it was cancer. *Id*. At that appointment, Plaintiff was offered another oral pain medication to try (Topamax), but she rejected it and stated that she did not want to try any other medications. *Id*., ¶¶62 & 66; *see also* Dkt. No. 35-1 at 45. Plaintiff had already tried and/or was taking Venlafaxine, Duloxetine, and Carbamazepine for pain management. *See* Dkt. No. 35-1 at 45; *see also* Dkt. No. 34, ¶15. According to Dr. English, Plaintiff kept asking for Gabapentinoids and Opioids, but those medications are not medically indicated for chronic pain because they can be addictive and Plaintiff had a known drug diversion history. Dkt. No. 32, ¶¶102 & 103; *see also* Dkt. No. 34, ¶¶15 & 16. Dr. English also states that Plaintiff had previously reported that the Gabapentinoids and Opioids did not work and kept asking for higher doses and more potent medications. Dkt. No. 32, ¶¶102 & 103. However, because Plaintiff was still concerned that the mass was cancer, Dr. English ordered an MRI to confirm the prior lipoma diagnosis. *Id*., ¶56. On December 27, 2023,

6

Nurse Hiland (not a defendant) completed the MRI screening form and forwarded it to the scheduler. *Id*. But the radiologist at St. Agnes Hospital requested that the MRI order be changed to a CT scan. *Id*., ¶57. A CT scan would not give Dr. English the information she wanted, so she asked HSU staff to try another hospital. *Id*., ¶¶57 & 60.

On February 2, 2024, HSU staff asked Dr. Sukowaty to review Plaintiff's file and assist in scheduling the MRI. *Id*., ¶63. Dr. Sukowaty reviewed the file but denied the request for an MRI because it was not a first line diagnostic tool used for determining breast cancer—a mammogram was the first step. *Id*., ¶65. Dr. Sukowaty concluded that Plaintiff had a normal mammogram in 2019 and normal ultrasounds in April 2022 and June 2022. *Id*. Because a mammogram was a better diagnostic tool for cancer, and Plaintiff refused a second mammogram, she did not believe an MRI was useful or necessary. *Id*., ¶67. She suggested that a follow-up ultrasound could be completed to check the condition of the mass. *Id*. Plaintiff agreed to a third ultrasound on March 1, 2024, which showed a 1.2 x 0.6 x 0.6 cm benign appearing mass. *Id*., ¶71. Again, the mass was shrinking. *Id*., ¶106.

Between March 2024 and June 2024, Plaintiff continued filing numerous HRSs about chest/arm pain from the mass, all of which were addressed by non-defendant HSU staff: Nurse Winkler, Nurse Hiland, Nurse Krainyk, APNP Schuerman, and Nurse Dorau. *Id*., ¶¶72-87. Plaintiff was scheduled for five more in-person examinations (one of which she rejected). *Id*., ¶¶74, 77, 79, 82, & 84. She still had access to the prior pain medications, both oral and topical. *Id*. And there still were no changes to the condition of the skin that would show a concern for cancer. *Id*., ¶82. AHSM Haseleu was present during the March 22, 2024 appointment, but Dr. English established the plan of care. *Id.,* ¶74. AHSM Haseleu explains that, as an AHSM, she provides overall administrative support in the HSU, but she must defer to Advance Care Providers

7

regarding medical treatment. *Id.*, ¶5. An AHSM cannot override or alter a medical decision made by an Advance Care Provider nor can she prescribe pain medication other than Tylenol. *Id.*, ¶6. In April 2024, Plaintiff threatened AHSM Haseleu with legal action, if she didn't provide adequate medical care. *Id.*, ¶¶76 & 77. HSU staff also continued looking for a hospital that would perform the MRI that Dr. English had wanted in December 2023. *Id.*, ¶60.

On June 26, 2024, Plaintiff received an MRI, which came back normal. *Id.*, ¶¶87 & 88. About a month later, in early August 2024, Plaintiff was admitted to a hospital for a different medical condition. *Id.*, ¶92. Because she expressed concern about the mass during the hospital admission process, the hospital performed a CT scan, which also came back normal. *Id.* In total, Plaintiff received a mammogram, three ultrasounds, an MRI, and a CT scan to diagnose the mass she was concerned about. *Id.*, ¶¶16-92. All tests came back normal. *Id.*

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly

8

Case 2:24-cv-00578-SCD   Filed 12/05/25   Page 8 of 13   Document 44

entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

## ANALYSIS

To survive summary judgment on an Eighth Amendment deliberate indifference claim, Plaintiff must provide evidence from which a reasonable jury could conclude that: (1) she faced an objectively serious medical condition; and (2) Defendants subjectively knew about the medical condition and disregarded it. *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (citing *Arnett v. Webster*, 658 F.3d 742, 750, 751 (7th Cir. 2011)). "The requirement of subjective awareness tethers the deliberate-indifference cause of action to the Eighth Amendment's prohibition of cruel and unusual punishment." *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016). "[T]he court looks into [a prison official's] subjective state of mind." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016). A plaintiff need not show that the official intended harm or believed that harm would occur, but mere negligence is not enough. *Id.*; *see also Whiting,* 839 F.3d at 662 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.") A plaintiff must provide evidence that an official *actually* knew of and disregarded a substantial risk of harm. *Petties*, 836 F.3d at 727.

In the prison medical care context, examples of deliberate indifference include: (1) ignoring a request for medical assistance; (2) refusing to take instructions from a specialist (3) persisting in a course of treatment known to be ineffective; (4) choosing an easier and less efficacious treatment without exercising medical judgment; and (5) delaying in treatment which serves no penological interest. *Id.* at 729-31. The Court examines the totality of an inmate's medical care when analyzing deliberate indifference. *See Gutierrez v. Peters*, 111 F.3d 1364, 1375 (7th Cir. 1997).

Plaintiff complains that she has two serious medical conditions: (1) a mass on her chest that she believes is cancerous; and (2) chronic chest/left arm pain allegedly caused by the mass. Regarding the mass itself, four different forms of diagnostic testing—a mammogram, an ultrasound, an MRI, and a CT scan—have all confirmed that the mass is benign, is shrinking, is likely lipoma, and does not require further treatment. Further, numerous in-person examinations of the mass since March 2022 have also confirmed that there have been no significant changes to the condition of the skin around the mass, which would be present if the mass was malignant or cancerous. Based on this record, no reasonable jury could conclude that the mass itself was an objectively serious medical condition. *See e.g., Thompson v. Godinez*, 561 F. App'x 515, 519 (7th Cir. 2014) (holding that lipoma is not a serious medical condition); *see e.g., Blackmon v. Myers*, No. 3:19-CV-01297-NJR, 2022 WL 2967339, at *4 (S.D. Ill. July 27, 2022) (noting that lipoma does not constitute a serious medical condition).

Plaintiff appears to disagree with the medical professionals' diagnosis and claims that the mass <u>is</u> "possibly cancerous," *see* Dkt. No. 38 at 1, and should be removed, *see* Dkt. No. 38 at 25 (complaining that Defendants"[left] me with the mass inside my chest."). But Plaintiff is not a medical expert qualified to disagree with the diagnosis of two different doctors. *See e.g. Durley v. Jeanpierre*, No. 21-CV-883-PP, 2024 WL 3534650, at *17 (E.D. Wis. July 25, 2024). She also cannot demand specific treatment in the form of surgery. *See Forbes v. Edgar*, 112 F.3d 262, 266 (7th Cir. 1997). Additionally, even if the mass was an objectively serious medical condition, the numerous forms of diagnostic testing done on the mass, along with the numerous in-person appointments to check on the condition of the skin around the mass, show that Defendants were not deliberately indifferent towards it.

Regarding the alleged pain from the mass, the Court will assume that it was an objectively serious medical condition for purposes of summary judgment. But no reasonable jury could conclude that Defendants were deliberately indifferent towards it. *See e.g. Flores v. Welborn*, 119 F. App'x 6, 9 (7th Cir. 2004) (holding that two examinations during a six-month period for alleged pain from lipoma was not deliberate indifference). Plaintiff first complained about pain from the mass in March 2022. She has since received consistent pain management treatment options. Plaintiff has trialed numerous oral medications for pain management (Venlafaxine, Duloxetine, and Carbamazepine); has had access to three different types of topical pain-relieving creams; has received ice packs; was placed in the chronic pain management program; and has been given the option to try a different oral pain medication (Topamax), which she rejected by stating that she did not want to try any other medications.

With respect to AHSM Haseleu specifically, she could not prescribe anything other than Tylenol. Therefore, AHSM Haseleu could not prescribe anything else for the pain; and she had to defer to the Providers' medical judgment on further pain medication treatment. With respect to Dr. Sukowaty and Dr. English, they did not believe that the Gabapentinoids and Opioids Plaintiff requested were medically appropriate for Plaintiff. Dr. English explains that Gabapentinoids and Opioids are not appropriate for chronic pain as the medications can be addictive and Plaintiff had a known drug diversion history. Plaintiff had also previously reported that those medications did not work for her anyway. In light of those circumstances, Dr. English believed that Topamax was the better prescription to try, but Plaintiff rejected that option and stated she did not want to try any other medications. Plaintiff's disagreement with what medication is appropriate for her medical condition does not establish a §1983 claim. *See Chadwick v. Walker*, 365 F. App'x 687,

690 (7th Cir. 2010) ("[D]isagreement with the exercise of medical judgment does not state a claim for deliberate indifference.")

Plaintiff's response materials repeatedly claim that her requests for medical care were "ignored" and Defendants kept ordering treatment known to be ineffective. But the totality of her medical records shows otherwise. Plaintiff received over a dozen in-person medical appointments, three different types of topical pain medications, ice packs, numerous oral pain medication trials, a mammogram, three ultrasounds, an MRI, and a CT scan. Her complaints were not ignored. To the extent Plaintiff believes that she has received the same ineffective treatment over and over, it is because she has refused to complete an updated mammogram (the first-line diagnostic test for breast masses), which may have identified other possible treatment options. She has also stated that she did not want to try any other pain medications recommended by the doctors, which limited her options given that she is allergic to NSAIDs and cannot take Gabapentinoids and Opioids based on her drug diversion history. Based on the totality of the record, no reasonable jury could conclude that Defendants were deliberately indifferent towards Plaintiff's medical condition. Accordingly, Defendants are entitled to summary judgment and the Court will dismiss this case.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant's motion for summary judgment (Dkt. No. 30) is **GRANTED**; and this case is **DISMISSED**. The Clerk is directed to enter judgment accordingly.

Dated in Milwaukee, Wisconsin this 5th day of December, 2025.

_____
STEPHEN C. DRIES
United States Magistrate Judge

This order and the judgment to follow are final. Plaintiff may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $605.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. §1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serious physical injury. *Id.*

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The Court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.